[No. 2874. July 16, 1924. Rehearing Denied Nov. 22, 1924.]

## GALLAGHER v. LINWOOD.

### SYLLABUS BY THE COURT

1. A paper is filed when it is delivered to the proper officer to be kept on file.

#### ON REHEARING

2. A reply in an election contest proceeding must be served by the sheriff, or, in case of his disqualification, by some one specially appointed to act.

Appeal from District Court, Colfax County; T. D. Leib, Judge.

Election contest by Manes Gallagher against William J. Linwood. From a judgment for defendant, plaintiff appeals. Affirmed.

D. K. Sadler, H. L. Bickley, and H. A. Kiker, all of Raton, for appellant.

Crampton and Darden, of Raton, for appellee.

OPINION OF THE COURT.

BOTTS, J.   The appellant contested the election of the appellee for the office of sheriff of Colfax county. The court, on motion of appellee, struck appellant's reply, and then sustained appellee's motion for judgment on the pleadings.   The motion to strike the reply was based on two grounds: First, that service of the reply had not been made as required by law; and, second, that the reply was not filed within the time required by law.

Service of the reply was not made by the sheriff or by some one specially appointed by the court to make service, but by a private individual, over the age of 18 years and not a party to the action, who made return by affidavit, from which it appears that he unsuccessfully endeavored to find the appellee at his usual place of abode and elsewhere, and thereupon served the reply on the appellee by securely tacking à copy thereof on the front door of his residence. Section 2076 of the Code of 1915 requires that "a copy of the notice of contest, answer and reply shall be served respectively in the same manner as process is now by law required to be served in an action at law." This section is a part of the act of January 14, 1876, prescribing the procedure for election contests; and it is argued by appellee that, by the language quoted, the law prescribing the manner in which process should be served, which was in force on January 14, 1876, was adopted as a part of the election contest statute, thereby requiring that service of the reply be made in the manner then prescribed rather than in the manner prescribed by the law in force at the time of making the service, and that the words "in the same manner" include, not only the method of service, but the qualification of the person by whom service is to be made.   Appellant, on the other hand, argues that, even though it be conceded that the law prescribing the manner of service in force at the time of the passage of the election contest act is to be followed, yet he was not compelled to look to the law as

it then existed for the qualification of the officer or person by whom service should be made.

At the time service of the reply was made, section 4093 of the 1915 Code authorized the service of summons by any person not a party to the action, over the age of 18 years; but the statute in force at the time of the passage of the election contest statute did not authorize service by a private individual. We have been able to find but one case where the exact question has been passed on. The statutes of Minnesota (Gen. St. 1878, c. 81, § 5) required that, on foreclosure of a mortgage by advertisement, the copy of notice of sale "shall be served in like manner as summons in civil actions in the district court," and in the case of Kirkpatrick v. Lewis, 46 Minn. 164, 47 N. W. 970, 48 N. W. 783, the Supreme Court of Minnesota held that the language had reference merely to the mode of making service, and not to the persons by whom it might be made. The court said:

"Gen. St. 1878, c. 81, § 5, provides that 'such notices shall be served in like manner as summons in civil actions in the district court.' By reference to Gen. St. c. 66, we find that section 56 provides by whom summons in civil actions may be served, to wit, 'by the sheriff of the county where the defendant is found, or by any other person not a party to the action.' Also that section 59 provides how and on whom they shall be served, to wit, 'by delivering a copy thereof as follows: * * * Fourth. To the defendant, personally, or by leaving a copy at the house of his usual abode,' etc. We are clearly of the opinion that the words 'in like manner,' used in section 5, c. 81, refer only to the mode of service, and not to the persons by whom it may be made; and hence that the provisions of section 56, c. 66, have no application. Among the reasons aside from the literal and natural meaning of the language used, that lead us to the conclusion are the following: Works of practice and codes of procedure, as does chapter 66 of our statutes, invariably treat of the questions by whom service may be made, and the mode and manner of making it, as distinct subjects, thus indicating a general understanding that the latter does not include the former."

The reason given by the Minnesota court for its conclusion is applicable here, since the mode or manner of making service is treated by chapter 29 of the Revised Statutes and Laws of Territory of 1865, while the officers by whom service may be made are dealt

with in chapters 20 and 99 of the Revised Statutes of that year. These statutes were in force at the time the election contest law was adopted, as was also the Act of January 31, 1867 (Laws 1866-67, p. 106) providing for the service of process when there should be a vacancy in the office of sheriff, or when the sheriff should be a party to the suit, or otherwise disqualified. Section 4 of said chapter 20 is in the following language:

"Sec. 4. It shall be the duty of the clerk of the district court, in all causes not otherwise provided for, to issue all process to the sheriff of the county in which the trial or cause shall be commenced or presented, or in which final sentence shall be rendered; and it shall be the duty of the sheriff to execute faithfully such process, and return the same to the said court, as provided by law."

Section 2 of said chapter 99 is as follows:

"Sec. 2. All process issued by the clerks of the circuit court, and by the clerks o.¹ the perfects, shall be directed to the sheriff of their respective counties, who shall execute such process according to law, and shall attend upon such courts during their sittings."

Section 1 of chapter 29, under the subhead "How Process Served," is as follows:

"Section 1. That all original process from any of the courts in this territory shall be executed by the proper officer as follows: * * * Fourth. If no such person shall be found willing to accept a copy of the process as above provided for, then by posting the same in the most public part of the defendant's premises. * * ' "

It is observed that by said chapter 20 it is made the duty of the sheriff to execute process "as provided by law," and by chapter 99 it is made his duty to execute the process "according to law." The meaning of the sections would not have been changed in the least had they required in each instance that the sheriff executed process "in the manner required by law," and, in order to ascertain the manner of service which the law required, reference must be made to a widely separated chapter of the Revised Statutes, where the different methods or modes of making service are

prescribed. From this we conclude that, when the Legislature required service to be made ''in the same manner as process is now by law required to be served in an acton at law,'' it was the intention to prescribe the method or mode of making service, without reference to the person or officer by whom such service should be made.

Appellee relies on Brunleve v. Cronan, 176 Ky. 818, 197 S. W. 498. While it appears therefrom that the Kentucky election contest statute requires the notice of contest to be ''served in the same manner as a summons from the circuit court,'' the question now before us was not considered by the court. The particular question there was whether or not a sufficient showing had been made to secure the appointment of a special bailiff to make service. It is significant, however, that the Kentucky court in its discussion seemed to consider the manner of service and the person or persons by whom service might be made as two separate and distinct subjects, holding that the notice ''must be served in the manner and at the time and by the persons or person as required by the statute.'' Nor are we aided by the Missouri case of State ex rel. Woodson v. Robinson, 270 Mo. 212, 192 S. W. 1001, likewise relied on by appellee. No language similar to that contained in our statute and now under consideration was before the court for construction in that case. The principle question was whether the notice of contest must be served by one authorized to serve process in civil actions, or could be served by one qualified under the statute to make service of ordinary notices. It was held that inasmuch as the notice was, in effect, the process by which the contestee was brought into court, it must be served by one qualified to make service of any other original process.

It becomes of no importance to determine whether or not the law prescribing the manner of service in effect at the time of the passage of the election contest act, or that in effect at the time service was had, is

to be followed, since the manner of service, as defined by us, is the same in both cases.

The only remaining question to be decided in determining the sufficiency of the service is whether or not sufficient effort had been made to find the appellee before posting copy of the notice on the front door of his residence. The principal argument advanced by appellee in this particular is that, while the person employed to make service had been to appellee's house twice, and each time had rung the doorbell without finding anyone, he did not ring the doorbell when he returned the third time for the purpose of posting the notice on the door. While it is true that the election contest statute prescribes a special procedure which must be strictly followed, as argued by appellee and as conceded by appellant, we believe it would be carrying the strictness entirely too far, and beyond all reason, to hold the service bad because the doorbell was not rung on the third trip. All three visits to appellee's residence were made on the same evening, each succeeding one being made very shortly after the next preceding. After failing to find any one upon whom service might be made on the second visit, the person in charge of making the service returned to the office of appellant's counsel for directions, and, immediately thereafter, made his third visit for the purpose of posting the notice. The motion to strike the reply, therefore, in so far as it is based on the ground of alleged insufficiency of service, was not well taken.

The other ground on which the motion is based depends on these facts: Late in the afternoon of the last day allowing by law for filing a reply, one of the attorneys for the contestant called the clerk on the telephone, and requested that she remain in the office beyond the usual closing hour, in order that he might file a paper, the preparation of which was then not quite complete. This request was granted, and later the attorney appeared at the clerk's office and presented the reply in this case, and the clerk put on

it the usual filing certificate.  The attorney then
asked permission to take the reply across the hall to
the contestee's office, to see if he would accept and
acknowledge service thereof.  In a few minutes, he
returned, advising the clerk that he had not found
the contestee, and again asked her permission to take
the reply with him.  This request was also granted,
and the attorney departed with the paper.  The clerk
made no record of the filing, and the attorney left
no receipt.  The next forenoon, after the time for
filing a reply had expired, one of the attorneys for
the contestee examined the files and records of the
clerk's office, and found no reply and no record of
one having been filed.  He was told by the clerk
what had taken place.  The clerk then called con-
testant's attorney .on the phone, and advised him of
the inquiry.  He returned the reply to the clerk's
office, and the clerk entered a record in her docket of
the filing as of the previous day.  The question is
whether the reply was· filed in time.

[1]    Hundreds of opinions are found dealing with
the question of whether or not a paper has been filed,
but they do little more than state a general rule, from
which the courts determine whether or not there has
been a filing under the particular facts and circum-
stances there under consideration.  This general rule,
on which all the courts seem to agree, is epitomized by
Mr. Freeman in a note appearing at page 294 of 15
American State Reports.  He says:

    ''The word 'file' is derived from the Latin filum, signify-
ing a thread, and its present application is evidently drawn
from the ancient practice of placing papers upon a thread
or wire for safekeeping.  The origin of the term clearly in-
dicates that the filing of a paper can only be effected by
bringing it to the notice of the officer, who anciently put it
upon the thread or wire; and, accordingly, under the modern
practice, the filing of a document is now generally understood
to consist in placing it in the proper official custody by the
party charged with the duty of filing it, and the receiving
of it by the officer, to be kept on file.  Phillips v. Beene, 38
Ala. 248; Holman v. Chevaillier, 14 Tex. 337; Gorham v.
Summers, 25 Minn. 81; Naylor v. Moody, 2 Blackf. 347.  The
most accurate definition of filing a paper is that it is its de-

livery to the proper officer, to be kept on file. County Commissioners v. State, 24 Fla. 55; 12 Am. St. Rep. 183; Peterson v. Taylor, 15 Ga. 483, 60 Am. Dec. 705; Powers v. State, 87 Ind. 148 ; King v. Penn., 43 Ohio St. 57.".

Contestant relies on three cases in support of his argument that the paper had been filed, viz., Pendrey v. Brennan, 31 Idaho, 54, 169 Pac. 174, Phillips, Coldsby & Blevins v. Beene's Administrator, 38 Ala. 248, and Bade v. Hibberd, 50 Or. 501, 93 Pac. 364. These cases do little more than state the general rule, and the first two hold, under the facts there involved, that there was no filing. However, the facts are so very dissimilar to those involved in the case now before us that they are of little value.

Contestee relies on Meridian National Bank v. Hoyt, 74 Miss. 221, 21 South. 12, 36 L. R. A. 796, 60 Am. St. Rep. 504, and Beal v. Alexander, 6 Tex. 531. The facts in those cases more nearly resemble the facts here. However, in the Mississippi case the rights of a third party were involved, as was also the situation in the case of Wilkinson v. Elliott, 43 Kan. 590, 23 Pac. 614, 19 Am. St. Rep. 158. In the Texas case the opposing parties were further misled by the silence of counsel, who knew of the filing, if any had been made, at a time when the existence of the paper in question was material to the action of the court. The cases cited by contestee strongly persuade us of the correctness of his position, but, on the whole, we have concluded that a proper application of the general rule to the facts of this particular case requires us to hold that the paper was filed at the time it was delivered by contestant's attorney, on the evening of the last day upon which it could have been filed under the law. The duty of the party desiring to file a paper is performed with its delivery to the proper officer, to be kept on file, and the failure of the officer to perform his duty does not prejudice the rights of the parties. Neither does the withdrawal of a paper after it has once been filed cancel or render ineffective the previous filing, and the fact that this paper was withdrawn immediately after its delivery to the clerk

is only evidence to be considered in determining the question of whether or not the paper was then filed. This is also true of the certifying by the clerk on the paper itself that it had been filed. That is not conclusive, but is only evidence to be considered along with other facts. Likewise, while the law requires the clerk to make a record of a paper when it is filed, the failure to so record the filing is only evidence to be considered in determining the intention. The evidence in this case, which has impelled us most strongly to the conclusion already announced, is the fact that counsel asked permission of the clerk to withdraw the paper, and the clerk granted that permssion. Had the paper not been filed, it would still have been in the control of the attorney, and the clerk's permission would have been wholly unnecessary. Whether the clerk is guilty of neglect of duty, and, if so, whether she has incurred any liability because thereof, are questions not now before us. The second ground of the motion to strike the reply is therefore likewise not well taken, and the court committed error in sustaining the motion.

This makes it unnecessary for us to consider the court's ruling on contestee's motion for judgment on the pleadings, because that motion was bottomed on the absence of any reply denying the allegations of the answer.

The case, therefore, must be reversed, and remanded with directions to the trial court to overrule contestee's motion to strike the reply, and it is so ordered.

PARKER, C. J., and BRATTON, J., concur.

### On Rehearing.

BOTTS, J. By motion, brief, and argument on rehearing appellee urges that in our original opinion we have assumed, without actually deciding, that section 4093 of the 1915 Code may be looked to for the agency by whom the reply could be served in this case, and contends that, even granting the correctness of our construction of the words, "in the same manner

as process is now by law required to be served in an action at law'' we must yet determine the question of the agency, and that a correct decision of that question requires service by the sheriff (or, in case of disqualification, by some one specially appointed.) We have become convinced that appellee is right in this contention·

[2] The election contest statute, in effect, makes the notice, answer, and reply process, but it is not a summons in a civil action, which seems to be the only form of process which said section 4093 authorizes to be served by a private individual. To be sure, a summons is process; but all process is not a summons. Both at common law and by statute process is required to be served by an officer, unless an exception be made such as that contained in section 4093. An election contest being a special proceeding, required to be strictly followed, such a statutory exception cannot be broadened by construction so as to cover a necessary step in the procedure, unless it be plainly apparent that it was so intended by the Legislature· In the present instance such intention does not appear. The attempted service of the reply, being unauthorized, was no service, and the trial court was correct in treating the issues as though there was no reply. This left undenied the new matter in the answer, from which, and from the allegations of the notice, it appeared that appellee received a clear majority of the legal votes cast at the election under consideration.

From the conclusion which we have now reached, it follows that our previous order should be set aside and the judgment of the lower court affirmed, and it is so ordered.

PARKER, C. J., and FORT, J., concur.